## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RECEIVED AND FILED

CLERK'S OFFICE USDC PR

2024 DEC 12 PM 5:53

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[1] JUAN CARLOS ORTIZ-VAZQUEZ,<br>    aka "FLACO,"<br>    (Counts 1-8)<br>[2] CRISTINA GUEVARA-CASELLAS,<br>    (Counts 1-8)<br>[3] ELIAS MARTINEZ-RIVERA,<br>    aka "VIEJO-COLI,"<br>    (Count 1)<br>[4] JOSE LUIS AUDAIN-<br>    RODRIGUEZ,<br>    aka "WICHY, NEGRE, DOBLE V-<br>    W, DOBLETA,"<br>    (Count 1)<br>[5] CHRISTOPHER SANCHEZ-<br>    ASENCIO,<br>    aka "GUAYNA,"<br>    (Count 1)<br>[6] MOISES MOJICA-TORRES,<br>    aka "MOI,"<br>    (Counts 1 and 2)<br>[7] ERNESTO MALAVE-SANTIAGO,<br>    aka "PONCE,"<br>    (Counts 1, 2, and 9)<br>[8] STEVE VERGELI-NEGRON,<br>    aka "BOCILLO,"<br>    (Count 1)<br>[9] JIM ALMODOVAR-<br>    QUIRINDONGO,<br>    aka "JIM BALL,"<br>    (Count 1) | **INDICTMENT**<br><br>CRIMINAL NO. 24-456 ( SCC )<br><br>CRIMINAL VIOLATIONS:<br><br>21 U.S.C. §§ 841(a)(l), (b)(l)(A),<br>(b)(1)(B), (b)(1)(C), and 846<br><br>18 U.S.C. § 924(c)<br><br>18 U.S.C. § 1957<br><br>NINE COUNTS & FORFEITURE<br>ALLEGATIONS |

[10] ANGEL ABDIEL ARCHILLA-
     MONTALVO,
     (Count 1)
[11] EFRAIN GONZALEZ-SERRANO,
     aka "EL SENOR DE LOS CIELOS,
     JUNITO,"
     (Count 1)
[12] ERNESTO VARGAS-RODRIGUEZ,
     aka "GOLO,"
     (Count 1)
[13] EDDIBER PEREZ-BURGOS,
     aka "COAMO,"
     (Count 1)
[14] ABRAHAM RODRIGUEZ-CRUZ,
     aka "BEBE,"
     (Count 1)
[15] ALEXANDER ALVARADO-
     ALMESTICA,
     aka "BALA,"
     (Count 1)
[16] JENSEN MEDINA CARDONA,
     (Count 1)
[17] EDGARDO SANTIAGO-COLON,
     aka "CUCO,"
     (Count 1)
[18] EDWIN SANCHEZ-RIJOS,
     aka "TOCAYO,"
     (Count 1)
[19] FELIX SERRANO-ROMAN,
     aka "COBA,"
     (Count 1)
[20] HARRY ACEVEDO-MENDEZ,
     aka "LA H,"
     (Count 1)
[21] HERIBERTO ROMERO-
     CORCHADO,
     aka "ERI,"
     (Count 1)

[22] JAMES SANTANA-GONZALEZ,
     aka "PILIN,"
     (Count 1)
[23] JULIO VARGAS-JIMENEZ,
     aka "JULIO GATILLO,"
     (Count 1)
[24] KERVIN LOPEZ-TORRES,
     aka "BEETHOVEN, GORDO,
     GEMELO,"
     (Count 1)
[25] KEVIN HERNANDEZ-RUIZ,
     aka "PESADILLA,"
     (Count 1)
[26] MIGUEL GONZALEZ-
     CONCEPCION,
     aka "OMY BARBER, OMY
     GALLINA,"
     (Count 1)
[27] LUIS MELENDEZ-GARCIA,
     aka "LUISITO HUMACAO,"
     (Count 1)
[28] ANIBAL RAMIREZ-ALICEA,
     aka "NIBBY, ANIBAL MARTINEZ-
     ALICEA,"
     (Count 1)
[29] BENNY RODRIGUEZ-MERCADO,
     (Count 1)
[30] CHRISTIAN CANDELARIA-
     FELICIANO,
     aka "GARBANZO,"
     (Count 1)
[31] DONATO CORTES-MATOS,
     (Count 1)
[32] WESLEY CORREA-LOPEZ,
     (Count 1)
[33] MILAGROS JEANETTE RIVERA-
     GONZALEZ,
     aka "JANET,"
     (Count 1)

[34] MINERVA ROMAN-
     DOMINGUEZ,
     (Count 1)

Defendants.

THE GRAND JURY CHARGES:

## INTRODUCTION

### GROUP 31 PRISON GANG, also known as "LOS TIBURONES"

1.    The Group 31 Prison Gang (hereinafter "Group 31"), whose members are known as Los Tiburones ("the Sharks") was formally created in 1988. Group 31's founding members registered the non-profit corporation with the Puerto Rico Department of State under the name "G31-Octubre-1988 Tiburones Inc." Group 31's symbol is a shark fin.

2.    The incorporation documents indicate that Group 31 objectives were: a) to establish and promote communication with the Puerto Rico Department of Corrections and Rehabilitation, the Legislative Assembly, and the Executive Branch; b) to seek better equal opportunities for each inmate to improve the quality of life within the Correctional System of Puerto Rico; and c) promote moral and social rehabilitation in accordance with the ideals enshrined in the Constitution of the Commonwealth of Puerto Rico and its laws. Notwithstanding these stated objectives, current practice and activities of Group 31 within the Puerto Rico prison system involves significant criminal activity, including violence, drug trafficking, and money

laundering.

3.      Group 31 established a series of "norms" or "rules" that members were expected to follow.  However, the establishment of certain rules and norms did not preclude Group 31, during the timeframe relevant to this Indictment, from: a) controlling the distribution of illegal substances in several institutions, resulting in serious bodily injury and multiple overdose deaths; b) establishing a Group 31 disciplinary system that included severe beatings of inmates; c) establishing government liaisons for the purpose of reducing prison sentences; d) mandating political affiliations and directing prisoners who to vote for in primary and general elections; e) obtaining preferential treatment from the prison staff within the institutions; and f) smuggling cellular phones and other prohibited items into the institutions where they were being housed.

4.      Group 31 established and maintained control of significant illegal substances distribution at numerous institutions operated by the Puerto Rico Department of Corrections and Rehabilitation.  Those institutions included, but were not limited to: a) Institucion Correccional Guerrero, Aguadilla; b) Complejo Correccional Las Cucharas Sgto. Pedro Joel Rodriguez Matos, Ponce; c) Institución Correccional Bayamon (501); and d) Institución Correccional Guayama Maxima Seguridad (1000).

5.      Group 31 established and followed a leadership structure within the correctional institutions.  The principal leader of Group 31 was called the Maximum

Leader. Serving beneath the Maximum Leader were Module Leaders who managed Group 31's day-to-day activities within the prison module where they resided. Within each module were Security Leaders, who, along with other Group 31 members, were in charge of "security" and discipline within the modules. Also serving within the modular leadership structure were Orderlies, who were in charge of the illegal substance distribution within the modules where they resided.

6.      To distribute illegal substances within the institutions, members of Group 31 relied on close associates in the free community to complete tasks essential to the enterprise. These associates, several of whom are charged herein, worked with and for Group 31 with full knowledge of the illegal purpose of their actions. The roles played by these associates on the outside included, but were not limited to: a) purchasing the illegal substances distributed in the institutions; b) packaging the illegal substances distributed in the institutions; c) arranging for the smuggling of the illegal substances into the institutions through various methods; d) collecting payments for the illegal substances; and e) conducting financial transactions to further the financial interests of the enterprise.

7.      Group 31 trafficked multiple illegal substances within the institutions they controlled. Those included, but were not limited to: a) fentanyl; b) suboxone; c) heroin; d) cocaine; e) marijuana; and f) synthetic marijuana. Group 31 received its supply of narcotics from several sources, including members of other prison gangs (*i.e.*

Los 25) who were housed in some of the same institutions as Group 31 members.

8.      Group 31 successfully smuggled the illegal substances into these institutions utilizing several methods.  One of the principal smuggling methods involved using unmanned aerial vehicles (hereinafter "drones") that carried packages containing the illegal substances.  The drones would be remotely navigated by pilots, who frequently carried firearms to protect themselves and the illegal substances.  Pilots would drop the packages containing illegal substances within the prison grounds where they would be collected by members of Group 31, or individuals working on behalf of Group 31, for subsequent distribution within the institutions.  In addition, Group 31 smuggled illegal substances into the institutions using, among others: a) legal mail; b) family visits; c) official corruption/indifference; d) catapulting or throwing drugs into the prison yards ("picheos"); and e) hiding drugs inside other items entered into the prisons (*i.e.* PlayStations, remote controls, food items, and bags of ice).

9.      Group 31 financed their enterprise through the sale and distribution of illegal substances within the institutions.  Financial control and accounting for the enterprise was conducted by members of the organization in the free community.  Payment for drug transactions generally did not occur within the institutions.  Instead, members of the organization in the free community opened and maintained accounts in several banks and credit unions throughout Puerto Rico.  Those members would send and receive payments for the illegal substances in cash, as well as through Automated

Clearinghouse Credits (electronic payments that move money from one account to another).

10.    Group 31 members benefited from a pattern of official corruption and/or indifference by employees in charge of the inmates. In limited circumstances, staff members participated in the introduction and distribution of illegal substances on behalf of Group 31. At other times, through indifference or improper acts, staff members allowed Group 31's illegal drug distribution operation to thrive, through, among other things: a) telling Group 31 members when law enforcement was present in an institution; b) providing favorable intelligence to Group 31; c) allowing Group 31 to operate its own disciplinary system; d) failing to document and report incidents as required by policy; and e) failing to register seized items into evidence as required by policy.

11.    Group 31 members received privileges not afforded to other similarly situated prisoners housed in the same institutions. Those privileges included but were not limited to: a) special visiting hours; b) visits not authorized by prison regulations; c) the use of cellular telephones within the institutions; d) the use of PlayStation gaming consoles; e) the use of large screen televisions; and f) the use of Bluetooth earbuds.

12.    Group 31 established its own disciplinary system within its ranks. Discipline of members, as well as some non-members, was handled by Group 31's hierarchy, or members appointed by the leadership. Disciplinary measures utilized by Group 31

included but were not limited to: a) beatings; b) forcing prisoners to sit with their arms crossed so that they could be beaten and kicked; c) withholding food; d) withholding drugs; and e) locking prisoners up and restraining their movement.

13.    The use of illegal substances in penal institutions, including the illegal substances introduced by Group 31, was widespread and dangerous. Inherent issues with the use of illegal substances in prisons include the lack of any regulation as to the content of the illegal substances, in combination with a fear within the prison population to call for medical assistance if an issue occurs. In the time period relevant to this Indictment, the illegal substances introduced by Group 31 caused many overdoses and, at least, four overdose deaths attributed to a drug mixture containing fentanyl.

14.    Group 31, as allowed by the Constitution of Puerto Rico, actively participated in elections. Members of Group 31 were instructed by the group's leadership what candidates to vote for during elections. Individuals that did not vote for the Group 31 backed candidates were subjected to retribution, including the withholding of illegal substances.

15.    Group 31 communicated by means of contraband telephones and in writing. Group 31 maintained records to monitor the progress of the criminal enterprise, which included, but were not limited to: a) minutes of Group 31 meetings; b) drug ledgers; c) phone contact lists; and d) tally sheets.

## COUNT ONE
### *(Controlled Substance Conspiracy)*
21 U.S.C. § 846

1.    The Introduction section of this Indictment is incorporated herein by reference.

2.    Beginning in or about 2020, and continuing until on or about the date of the return of the instant Indictment, in the District of Puerto Rico and within the jurisdiction of this Court,

[1] JUAN CARLOS ORTIZ-VAZQUEZ,
aka "FLACO,"
[2] CRISTINA GUEVARA-CASELLAS,
[3] ELIAS MARTINEZ-RIVERA,
aka "VIEJO-COLI,"
[4] JOSE LUIS AUDAIN-RODRIGUEZ,
aka "WICHY, NEGRE, DOBLE V-W, DOBLETA,"
[5] CHRISTOPHER SANCHEZ-ASENCIO,
aka "GUAYNA,"
[6] MOISES MOJICA-TORRES,
aka "MOI,"
[7] ERNESTO MALAVE-SANTIAGO,
aka "PONCE,"
[8] STEVE VERGELI-NEGRON,
aka "BOCILLO,"
[9] JIM ALMODOVAR-QUIRINDONGO,
aka "JIM BALL,"
[10] ANGEL ABDIEL ARCHILLA-MONTALVO,
[11] EFRAIN GONZALEZ-SERRANO,
aka "EL SENOR DE LOS CIELOS, JUNITO,"
[12] ERNESTO VARGAS-RODRIGUEZ,
aka "GOLO,"
[13] EDDIBER PEREZ-BURGOS,
aka "COAMO,"
[14] ABRAHAM RODRIGUEZ-CRUZ,
aka "BEBE,"

[15] ALEXANDER ALVARADO-ALMESTICA,
aka "BALA,"
[16] JENSEN MEDINA CARDONA,
[17] EDGARDO SANTIAGO-COLON,
aka "CUCO,"
[18] EDWIN SANCHEZ-RIJOS,
aka "TOCAYO,"
[19] FELIX SERRANO-ROMAN,
aka "COBA,"
[20] HARRY ACEVEDO-MENDEZ,
aka "LA H,"
[21] HERIBERTO ROMERO-CORCHADO,
aka "ERI,"
[22] JAMES SANTANA-GONZALEZ,
aka "PILIN,"
[23] JULIO VARGAS-JIMENEZ,
aka "JULIO GATILLO,"
[24] KERVIN LOPEZ-TORRES,
aka "BEETHOVEN, GORDO, GEMELO,"
[25] KEVIN HERNANDEZ-RUIZ,
aka "PESADILLA,"
[26] MIGUEL GONZALEZ-CONCEPCION,
aka "OMY BARBER, OMY GALLINA,"
[27] LUIS MELENDEZ-GARCIA,
aka "LUISITO HUMACAO,"
[28] ANIBAL RAMIREZ-ALICEA,
aka "NIBBY, ANIBAL MARTINEZ-ALICEA,"
[29] BENNY RODRIGUEZ-MERCADO,
[30] CHRISTIAN CANDELARIA-FELICIANO,
aka "GARBANZO,"
[31] DONATO CORTES-MATOS,
[32] WESLEY CORREA-LOPEZ,
[33] MILAGROS JEANETTE RIVERA-GONZALEZ,
aka "JANET,"
[34] MINERVA ROMAN-DOMINGUEZ,

the defendants herein, did knowingly and willfully conspire, combine, confederate,

and agree with each other and with other individuals known and unknown to the

Grand Jury, to distribute and possess with intent to distribute controlled substances, to wit: a) 400 grams or more of a mixture or substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (commonly referred to as fentanyl), a Schedule II controlled substance; b) a detectable amount of a mixture or substance containing buprenorphine (commonly referred to as suboxone), a Schedule III controlled substance; c) one kilogram or more of a mixture or substance containing heroin, a Schedule I controlled substance; d) 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; e) a detectable amount of a mixture or substance containing marijuana, a Schedule I controlled substance; and f) a detectable amount of synthetic marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(A), and 841(b)(1)(B).

All in violation of 21 U.S.C. § 846.

## COUNT TWO
*(Aiding and Abetting in the Distribution of Controlled Substances Resulting in Death)*
21 U.S.C. § 841 and 18 U.S.C. § 2

1. The Introduction section of this Indictment is incorporated herein by reference.

2. On or about June 28, 2024, in the District of Puerto Rico and within the jurisdiction of this Court,

[1] JUAN CARLOS ORTIZ-VAZQUEZ,
aka "FLACO,"
[2] CRISTINA GUEVARA-CASELLAS,

[6] MOISES MOJICA-TORRES,
aka "MOI,"
[7] ERNESTO MALAVE-SANTIAGO,
aka "PONCE,"

the defendants herein, aiding and abetting one another, did knowingly and intentionally distribute a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (commonly referred to as fentanyl), a Schedule II controlled substance.

3.      The controlled substance distribution with which the defendants were a part of resulted in the death of: R.H.M., on or about June 28, 2024, in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

All in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2.

### COUNT THREE
*(Aiding and Abetting in the Distribution of Controlled Substances Resulting in Death)*
21 U.S.C. § 841 and 18 U.S.C. § 2

1.      The Introduction section of this Indictment is incorporated herein by reference.

2.      On or about August 11, 2023, in the District of Puerto Rico and within the jurisdiction of this Court,

[1] JUAN CARLOS ORTIZ-VAZQUEZ,
aka "FLACO,"
[2] CRISTINA GUEVARA-CASELLAS,

the defendants herein, aiding and abetting one another, did knowingly and intentionally distribute a mixture or substance containing a detectable amount of N-

phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (commonly referred to as fentanyl), a Schedule II controlled substance.

3.      The controlled substance distribution with which the defendants were a part of resulted in the death of: C.C.L., on or about August 11, 2023, in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

        All in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2.

## COUNT FOUR
*(Aiding and Abetting in the Distribution of Controlled Substances Resulting in Death)*
21 U.S.C. § 841 and 18 U.S.C. § 2

1.      The Introduction section of this Indictment is incorporated herein by reference.

2.      On or about November 14, 2022, in the District of Puerto Rico and within the jurisdiction of this Court,

[1] JUAN CARLOS ORTIZ-VAZQUEZ,
aka "FLACO,"
[2] CRISTINA GUEVARA-CASELLAS,

the defendants herein, aiding and abetting one another, did knowingly and intentionally distribute a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (commonly referred to as fentanyl), a Schedule II controlled substance.

3.      The controlled substance distribution with which the defendants were a part of resulted in the death of: W.M.P., on or about November 14, 2022, in violation of Title

21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

All in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2.

### COUNT FIVE
*(Aiding and Abetting in the Distribution of Controlled Substances Resulting in Death)*
21 U.S.C. § 841 and 18 U.S.C. § 2

1.    The Introduction section of this Indictment is incorporated herein by reference.

2.    On or about April 26, 2021, in the District of Puerto Rico and within the jurisdiction of this Court,

> [1] JUAN CARLOS ORTIZ-VAZQUEZ,
> aka "FLACO,"
> [2] CRISTINA GUEVARA-CASELLAS,

the defendants herein, aiding and abetting one another, did knowingly and intentionally distribute a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (commonly referred to as fentanyl), a Schedule II controlled substance.

3.    The controlled substance distribution with which the defendants were a part of resulted in the death of: R.L.B., on or about April 26, 2021, in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

All in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2.

## COUNTS SIX THROUGH EIGHT
### *(Money Laundering)*
18 U.S.C. § 1957 and 18 U.S.C. § 2.

1.    The Introduction section of this Indictment is incorporated herein by reference.

2.    On or about each of the dates listed below, in the District of Puerto Rico, the

defendants,

[1] JUAN CARLOS ORTIZ-VAZQUEZ,
aka "FLACO,"
[2] CRISTINA GUEVARA-CASELLAS,

aiding and abetting one another, did knowingly engage and attempt to engage in a

monetary transaction in criminally derived property of a value greater than $10,000

and was derived from specified unlawful activity, that is, a violation of 21 U.S.C. § 846

(conspiracy to distribute and distribution of controlled substances), in violation of 18

U.S.C. § 1957 and 18 U.S.C. § 2.

| COUNT | DATE | Description of Transaction | AMOUNT |
|-------|------|---------------------------|--------|
| 6 | 6/8/2020 | Cash Withdrawal From Account | $10,268.00 |
| 7 | 9/10/2020 | Cash Withdrawal From Account | $16,000.00 |
| 8 | 7/21/2021 | Purchase of Dodge Durango | $10,500.00 |

All in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2.

## COUNT NINE
### *(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)*
18 U.S.C. § 924(c)

1.   The Introduction section of this Indictment is incorporated herein by reference.

2.   On or about November 9, 2023, in the District of Puerto Rico and within the

jurisdiction of this Court, the defendant,

[7] ERNESTO MALAVE-SANTIAGO,
aka "PONCE,"

did knowingly and unlawfully possess a firearm, that is, a black handgun, in

furtherance of drug trafficking crimes as charged in Count One of this Indictment.

All in violation of 18 U.S.C. § 924(c)(1)(A).

## NARCOTICS FORFEITURE ALLEGATION
### 21 U.S.C. § 853(a)(1) and (2)

1.    The Introduction section of this Indictment is incorporated herein by reference.

2.    The allegations contained in Counts One to Five of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 21 U.S.C. § 853(a)(1).

3.    Pursuant to 21 U.S.C. § 853, upon conviction of an offense in violation of 21 U.S.C. §§ 841 and 846, set forth in Counts One through Five of this Indictment, the defendants shall forfeit to the United States any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense.

4.    If any of the property described above, as a result of any act or omission of the defendants:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

### FIREARMS AND AMMUNITION FORFEITURE ALLEGATION
18 U.S.C. § 924(d)(1) & 28 U.S.C. § 2461(c)

1.    The Introduction section of this Indictment is incorporated herein by reference.

2.    The allegations contained in Count Nine of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

3.    Upon conviction of the offense in violation of 18 U.S.C. § 924(c) as set forth in Count Nine of this Indictment, the defendant,

### [7] ERNESTO MALAVE-SANTIAGO,

shall forfeit to the United States pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved or used in the commission of the offense.

All pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

### MONEY LAUNDERING FORFEITURE ALLEGATION
21 U.S.C. § 853(p) & 28 U.S.C. § 2461(c)

1.    The Introduction section of this Indictment is incorporated herein by reference.

2.    The allegations contained in Counts Six through Eight of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

3.      Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of

18 U.S.C. § 1956(h),

> [1] JUAN CARLOS ORTIZ-VAZQUEZ,
> aka "FLACO,"
> [2] CRISTINA GUEVARA-CASELLAS,

shall forfeit to the United States of America any property, real or personal, involved in

such offense, and any property traceable to such property.

4.      If any of the property described above, as a result of any act or omission of the

defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. §853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28

U.S.C. §2461(c).


W. Stephen Muldrow
United States Attorney


_____

Max Pérez-Bouret
Assistant United States Attorney, Chief
Transnational Organized Crime Section

Date: Dec. 12, 2024

_____

María L. Montañez-Concepción
Assistant U.S. Attorney, Deputy Chief
Transnational Organized Crime Section


_____

Jorge L. Matos
Assistant United States Attorney
Transnational Organized Crime Section